IN THE UNITED STATES DISTRICT COURT
FOR THE MASSACHUSETTS

FILED
IN CLERKS OFFICE

| | |
|---|---|
| CAROLINE BEHREND, et al., | ) Miscellaneous Business Docket No.: 13  P 12: 30 |
| | ) |
| Plaintiffs, | ) U.S. DISTRICT COURT |
| | ) Eastern District of Pennsylvania, Civil Action |
| | ) No. 03-6604 |
| v. | ) **07 MBD 10224**-RCL |
| | ) Prior Related Cases: |
| | ) |
| COMCAST CORPORATION, et al., | ) Kristian v. Comcast Corp., Civ. Action No. 03- |
| | ) CV-12466-EFH |
| Defendants. | ) Rogers v. Comcast Corp., Civ. Action No. 04- |
| | ) 10142-EFH |
| | ) |
| | ) (Transferred to Eastern District of Pennsylvania |
| | ) per Judge Harrington's Order filed 12/1/06) |


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL THIRD PARTY, GREATER MEDIA, INC.,
TO PRODUCE SUBPOENAED DOCUMENTS**

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE MATTER BEFORE THE COURT ......................................................... 1

JURISDICTION ................................................................................................................................. 1

STATEMENT OF RELEVANT FACTS ....................................................................................... 2

      A.    Nature of the Case and Factual Background ............................................... 2

      B.    Document Subpoenas ................................................................................. 3

ARGUMENT ....................................................................................................................................... 5

I.     THE REQUESTED DOCUMENTS ARE RELEVANT TO
      PLAINTIFFS' CLAIMS ..................................................................................................... 6

II.    PLAINTIFFS TOOK REASONABLE STEPS TO AVOID UNDUE
      BURDEN AND EXPENSE ON GREATER MEDIA. ............................................ 9

      A.    Plaintiffs' Narrowly Tailored Subpoena is Not Unduly Broad
           or Overly Burdensome ............................................................................. 10

      B.    Greater Media's Request for Advance Payment of
           Unreasonable Costs is Unwarranted. ...................................................... 11

III.   GREATER MEDIA HAS FAILED TO ESTABLISH ITS
      PRIVILEGE CLAIMS AS REQUIRED BY FEDERAL RULE
      45(d)(2). .............................................................................................................................. 14

      A.    Greater Media's Attorney-Client and Work Product Claims
           Are Unsupported. ..................................................................................... 15

      B.    Contrary to Greater Media's Assertion, Disclosures Made
           Pursuant to Court Order Are Not Voluntary and Do Not Waive
           Greater Media's Asserted Privileges. ...................................................... 16

CONCLUSION ................................................................................................................................. 18

i

## TABLE OF AUTHORITIES

**PAGE**

## Cases

*Behrend v. Comcast Corporation,* 2007 WL 1300725 (E.D. Pa. 2007)...........................................2

*Behrend v. Comcast Corporation*, 2007 WL 2221415 (E.D. Pa. Aug. 1, 2007).........................2, 9

*Boston Children's Heart Found., Inc. v. Nadal-Ginard*, 1995 WL 17015062 (D. Mass. 1995).........................................................................................................................................11

*Covey Oil Co. v. Cont. 'l Oil Co.*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964 (1965) .........................................................................................................................................6

*Demers v. LaMontagne*, 1999 WL 1627978 (D.Mass. 1999) ......................................................10

*E.E.O.C. v. Electro-Term Inc.*, 167 F.R.D. 344 (D.Mass. 1996)....................................................6

*Glaberson v. Comcast Corporation*, 2006 WL 3762028 (E.D. Pa. Dec. 19, 2006).........................2

*Herbert v. Lando*, 441 U.S. 153 (1979)........................................................................................15

*In re Exxon Valdez*, 142 F.R.D 380 (D.D.C. 1992).......................................................................12

*In re First American Corp.*, 184 F.R.D. 234 (S.D.N.Y. 1998).................................................12, 13

*In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293 (S.D.N.Y. 2003) ...................................12

*In re Lupron Marketing and Sales Practices Litig.*, 313 F. Supp.2d 8 (D.Mass 2004) ................17

*In re Public Offering PLE Antitrust Litig.*, 233 F.R.D. 70 (D.Mass. 2006) ....................................6

*Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir. 1982)...................................................................7

*Klay v. All Defendants*, 425 F.3d 977 (11th Cir. 2005)..................................................................16

*Marx v. Kelly, Hart & Hallman P.C.*, 929 F.2d 8 (1st Cir. 1991)..................................................15

*McCloskey v. UPS Gen. Servs. Co.*, 1996 WL 684466 (D. Or. 1996) ....................................12, 13

*Radovich v. National Football League*, 352 U.S. 445 (1957).......................................................14

*SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959 (E.D. Pa. 2004) ...........................7

*Tutor-Saliba Corp. v. United States,* 32 Fed. Cl. 609 (Ct. Fed. Cl. 1995) .....................................13

*United States v. AT & T*, 642 F.2d 1285 (D.C. Cir. 1980) .............................................................17

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973).......................................................9

*United States v. International Business Machines Corp.*, 71 F.R.D. 88 (S.D.N.Y. 1976)................................................................................................................................................14

*United States v. Marine Bancorporation*, 418 U.S. 602 (1974)......................................................9

*United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410 (D.Mass. 1995)...................................9

*United States v. Nixon*, 418 U.S. 683 (1974)................................................................................15

*WestinghouseElec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) .............17

ii

*Winchester Capital Mgmt. Comp. v. Mfrs. Hanover Trust Co.*, 144 F.R.D. 170
(D.Mass. 1992) ....................................................................................................................15

## Statutes

28 U.S.C. §1292(b).................................................................................................................2

Section 1 of the Sherman Act...............................................................................................2, 9

Section 2 of the Sherman Act...............................................................................................2, 9

## Rules

Fed. R. Civ. P. 26(b)(1) ..........................................................................................................6

Fed. R. Civ. P. 26(b)(5) ..........................................................................................................5

Fed. R. Civ. P. 26(b)(5)(A)......................................................................................................5

Fed. R. Civ. P. 34(c) ...........................................................................................................1, 6

Fed. R. Civ. P. 37...................................................................................................................1

Fed. R. Civ. P. 37(a)(1) ..........................................................................................................1

Fed. R. Civ. P. 45...................................................................................................................1

Fed. R. Civ. P. 45(a)(2)(C) ......................................................................................................1

Fed. R. Civ. P. 45(c)(1) .......................................................................................................9, 11

Fed. R. Civ. P. 45(c)(2)(B) .................................................................................................1, 6, 11

Fed. R. Civ. P. 45(d).........................................................................................................14, 15

Fed. R. Civ. P. 45(d)(2) .....................................................................................................14, 15

Fed. R. Evid. 401 ...................................................................................................................6

Massachusetts Local Rule 40.4 ...............................................................................................1

Massachusetts Local Rule 40.4(a)(2) .......................................................................................1

60963

## STATEMENT OF THE MATTER BEFORE THE COURT

This motion arises from non-party Greater Media, Inc.'s ("Greater Media's") efforts to withhold discoverable documents from production under claims of irrelevance, undue burden and expense, and attorney-client and work product privileges. The positions taken by Greater Media as to these discovery disputes are contrary to established law.

As set forth in the accompanying declaration of Plaintiffs' counsel, Plaintiffs' original document Subpoena, issued pursuant to Fed. R. Civ. P. 45 and dated May 4, 2007, was served on Greater Media, Inc. on May 8, 2007. Greater Media objected by letter dated May 15, 2007. Since then, the parties have exchanged numerous written communications and have conferred in a continuing effort by Plaintiffs to reduce any significant burden or expense on Greater Media. Nonetheless, Greater Media has refused to produce any documents in response to the current revised Subpoena containing six document requests. *See* July 31, 2007 Subpoena, Schedule A, Woodward Decl., Ex. 9.

Pursuant to Fed. R. Civ. P. 34(c), 37, and 45(c)(2)(B), Plaintiffs respectfully move this Court to compel Greater Media to produce the requested documents for inspection and copying.

## JURISDICTION

Pursuant to Fed. R. Civ. P. 45(a)(2)(C), the subpoenas were issued from the District of Massachusetts, where Greater Media is situated and regularly conducts business. Rule 37(a)(1) provides that "[a]n application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be taken." Pursuant to Massachusetts Local Rule 40.4(a)(2), this Court may hear and determine special proceedings including discovery in cases pending in other districts. LR 40.4 confers authority on the Court to compel compliance with Plaintiffs' Subpoena Duces Tecum issued from this Court.

## STATEMENT OF RELEVANT FACTS

### A.    Nature of the Case and Factual Background

Plaintiffs, cable subscribers of Defendants (collectively, "Comcast"), filed the above

antitrust class action on December 8, 2003, in the United States District Court for the Eastern

District of Pennsylvania, alleging violations of Sections 1 (restraint of trade) and 2 (unlawful

monopolization and attempted monopolization) of the Sherman Act with respect to Defendants'

market allocating swap agreements with, and acquisitions of competitor cable companies, and

other anticompetitive conduct set forth in Plaintiffs' Third Amended Class Action Complaint for

Violations of the Sherman Antitrust Act. (Woodward Decl., Ex. 12.)[1]  The case is assigned to

the Honorable John R. Padova, who has issued rulings denying Comcast's motion to dismiss,

*Behrend v. Comcast Corporation,* 2007 WL 1300725 (E.D. Pa. 2007); reaffirming the denial of

Comcast's motion to dismiss following reconsideration, *Glaberson v. Comcast Corporation,*

2006 WL 3762028 (E.D. Pa. Dec. 19, 2006); granting Plaintiffs' motion for class certification

and certifying a Philadelphia class of Comcast's cable subscribers, *Behrend v. Comcast*

*Corporation,* 2007 WL 1300725 (E.D. Pa. May 2, 2007); denying Comcast's Rule 12(c) motion

for judgment on the pleadings, *Behrend v. Comcast Corporation,* 2007 WL 2221415 (E.D. Pa.

Aug. 1, 2007); and denying Comcast's motion to certify issues for interlocutory appellate review

pursuant to 28 U.S.C. §1292(b) (Order filed September 11, 2007).

---

[1] Also filed on December 8, 2003 in the District of Massachusetts and the Superior Court of Massachusetts, Middlesex, were two closely related class action antitrust cases, *Kristian v. Comcast Corporation,* Civ. Action No. 03-CV-12466 and *Rogers v. Comcast Corporation and AT&T Broadband,* No. 03-4985J, alleging that Defendants violated federal and state antitrust laws by restraining trade and engaging in unlawful monopolization and attempted monopolization in the Boston area cable market. The *Rogers* case was removed to the District of Massachusetts. Both *Kristian v. Comcast Corporation,* Civ. Action No. 03-CV-12466-EFH (D. Mass) and *Rogers v. Comcast Corporation and AT&T Broadband,* Civ. Action No. 04-10142-EFH (D. Mass.) were assigned to and consolidated before the Honorable Edward F. Harrington, who subsequently transferred them to the Eastern District of Pennsylvania. Judge Padova recently (July 31, 2007) denied Defendants' motions to dismiss plaintiffs' consolidated amended class action complaint in the *Kristian* and *Rogers* cases and the parties have begun class related discovery.

60963

## B.   Document Subpoenas

Plaintiffs' counsel made several attempts to resolve the issues presented by this motion to avoid court action. On May 4, 2007, Plaintiffs served their first Subpoena Duces Tecum on Greater Media. (Woodward Decl. ¶ 3, Ex. 13). On May 14, 2007, counsel for Plaintiffs and for Greater Media conferred by telephone concerning the subpoena. By letter dated May 15, 2007, counsel for Greater Media objected broadly to the subpoena, including on grounds that it was (1) excessively broad and unduly burdensome; (2) required the "disclosure of privileged or other protected matter" and "confidential commercial information" and (3) would require "wasted compensation paid" to Greater Media employees. (Woodward Decl., Ex. 2)

On May 24, 2007, in an effort to reduce any burden on Greater Media, Plaintiffs served a revised Subpoena accompanied by a letter to counsel for Greater Media. Plaintiffs (1) revised and clarified Requests Nos. 1 and 2; (2) eliminated Requests Nos. 6 and 7; (3) offered to review the documents at Greater Media's business or the location at which documents are stored; (4) offered to pay reasonable copying expenses; and (5) confirmed that Plaintiffs would agree that any privileges Greater Media asserts would not be waived by Greater Media allowing Plaintiffs' counsel to inspect and designate documents for copying at Plaintiffs' expense. Plaintiffs further asked Greater Media to identify any particular document requests that pose a burden on Greater Media and to clarify what compensation Greater Media was asserting in its May 15 letter objections. (May 24, 2007 cover letter and Subpoena and Schedule A, Woodward Decl., Exs. 3 and 4.)

On June 7, 2007, counsel for Greater Media again broadly objected to Plaintiffs' narrowed subpoena. In addition to its initial boilerplate objections, Greater Media insisted that Plaintiffs should be required to pay for all of the following: (1) outsourcing the review of Greater Media's documents to a law firm for the assistance of a paralegal and mid-level associate at

3

60963

hourly rates ranging from $180 to $350, (2) obtaining input from two Greater Media employees with knowledge of the transaction, (3) retrieving the documents, and (4) copying the documents. (Woodward Decl., Ex. 5).

On July 12, 2007, counsel for Plaintiffs wrote Greater Media and readdressed each of its concerns. Plaintiffs again offered to review the documents at Greater Media's business or where the documents are stored and to pay reasonable copying expenses. Plaintiffs also provided Greater Media with a copy of the Protective Order filed in this case, which provides that "any third party from whom discovery is sought may obtain the protection of this Protective Order." Plaintiffs further agreed to stipulate that if confidential or privileged information was inspected at the location, all such information shall be presumed to be designated as confidential by Greater Media until such time that Greater Media provides copies of designated documents to Plaintiffs' counsel; and further, that the production of such confidential or privileged information shall not constitute a waiver of confidentiality or other privilege. July 12, 2007 letter and attached Protective Order, Woodward Decl., Exs. 6 and 6.a.

On July 24, 2007, counsel for Greater Media once again broadly objected to Plaintiffs' subpoena. Greater Media did not identify any particular document requests that posed a burden. Greater Media insisted that voluntary disclosure of privileged information to a third party constitutes a waiver and that the Protective Order covers only inadvertent disclosure of privileged materials. Greater Media asked Plaintiffs to again narrow the scope of the subpoena while at the same time indicating that it would not comply with the subpoena without a court order and advance payment. (Woodward Decl., Ex. 7).

On July 31, 2007, Plaintiffs, in another good faith attempt to reach an amicable resolution, served a further revised subpoena limited to six document requests. Plaintiffs have

4

60963

narrowed the subpoena from fifteen to five document requests and one additional request seeking
Greater Media's document retention policies. Plaintiffs indicated they were still willing to
review and designate selected documents for copying and to pay reasonable reproduction costs.
Plaintiffs reassured Greater Media that they would stipulate that such a procedure would not
result in any waiver of applicable privileges and if confidential information was inspected, it
would be presumed at the time of inspection to be designated as confidential. Plaintiffs also
reminded Greater Media that the Protective Order provides numerous safeguards, including
limiting use of produced documents exclusively for purposes of this and identified related
litigation. Plaintiffs asked Greater Media to make any privilege claim expressly in a manner that
would allow Plaintiffs to assess the applicability of the claimed privilege pursuant to Fed. R. Civ.
P. 26(b)(5). (July 31, 2007 letter and Subpoena, Woodward Decl., Exs. 8 and 9).

In its August 3, 2007 letter reply, counsel for Greater Media again broadly objected to
Plaintiffs' third document subpoena on grounds of irrelevance, undue burden and expense, and
attorney-client and work product privileges. Greater Media objected without citing any specific
requests, providing the privilege log requested by Plaintiffs, or otherwise describing the nature of
the documents subject to that claim in a manner enabling Plaintiffs to assess the applicability of
the privilege claim, as required by Rule 26(b)(5)(A). Woodward Decl., Ex. 10. On August 31,
2007, Plaintiffs wrote to Greater Media's counsel in a further attempt to resolve their differences
amicably and, if necessary, to provide notice of Plaintiffs' intention to pursue appropriate
judicial proceedings to require Greater Media's compliance. *Id.*, Ex. 11.

## ARGUMENT

Greater Media has inappropriately refused to produce relevant documents pursuant to
Plaintiffs' twice narrowed outstanding Subpoena dated July 31, 2007 ("Subpoena"). The bases
for Greater Media's refusal are that (1) the requested documents are irrelevant, (2) production

5

60963

would be unduly burdensome and costly, and (3) the requested documents are protected by the attorney-client privilege and the work product doctrine. Greater Media makes these objections without first inspecting such documents, nor producing the required privilege log, and despite Plaintiffs' repeated efforts to narrow the Subpoena and reduce any significant costs. This Court should compel Greater Media to produce documents for inspection pursuant to the Subpoena. *See* Fed. R. Civ. P. 34(c), 37(a), and 45(c)(2)(B).

## I.     THE REQUESTED DOCUMENTS ARE RELEVANT TO PLAINTIFFS' CLAIMS.

Federal Rule 26(b)(1) permits a party to seek discovery on "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1); *In re Public Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 78 (D.Mass. 2006). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *In re Public Offering*, 233 F.R.D. at 78.[2] "[R]elevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to subject matter of the action." *E.E.O.C. v. Electro-Term Inc.*, 167 F.R.D. 344, 346 (D.Mass. 1996). Further, "relevant information includes any matter that is or may become an issue in the litigation." *Id.* (internal quotations and citation omitted). Moreover, any "[i]nconvenience to third parties may be outweighed by the public interest in seeking the truth in every litigated case." *Covey Oil Co. v. Cont.'l Oil Co.*, 340 F.2d 993, 999 (10th Cir.), *cert. denied*, 380 U.S. 964 (1965).

---

[2] "Relevant evidence" is "evidence having *any tendency* to make the existence of any fact that is *of consequence* to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (emphasis in original) (*quoting* Fed. R. Evid. 401). Using this definition, the court found that "[a]ny evidence [the non-party] might provide tending to prove the existence of such a price-fixing conspiracy would meet the standard of Rule 26(b)(1) discoverability because it is directly relevant to the 'subject matter involved in' the antitrust action." *Id.*

60963

On a motion to compel discovery, the party resisting discovery bears the burden of

showing that the information requested is not discoverable. *See SmithKline Beecham Corp. v.*

*Apotex Corp.*, 2004 WL 739959, at \*1 (E.D. Pa. 2004). A generalized claim of burden or

relevancy is insufficient:

> [T]he mere statement by a party that the [discovery] was 'overly
> broad, burdensome, oppressive and irrelevant' is not adequate to
> voice a successful objection . . . ." On the contrary, the party
> resisting discovery 'must show specifically how . . . each
> interrogatory is not relevant or how each question is overly broad,
> burdensome or oppressive.'

*Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citation omitted).

Under these settled legal standards, Greater Media cannot demonstrate that the

documents requested in Plaintiffs' twice revised and narrowed Subpoena are irrelevant and

therefore not discoverable. In their Third Amended Complaint (Woodward Decl., Ex. 12),

Plaintiffs allege that Comcast (and its predecessor, AT&T) unlawfully monopolized and

attempted to monopolize, and unreasonably restrained trade in, the Philadelphia and Chicago are

cable markets through a series of acquisitions of, and market allocating swap agreements with,

competitor cable companies. *See, e.g.*, Compl. ¶¶ 1-6, 48 and 49. One of several examples of

Comcast's acquisitions resulting in the addition of cable subscribers to its Philadelphia cluster is

the acquisition of Greater Philadelphia Cablevision, Inc., a subsidiary of Greater Media, Inc.,

which was announced on or about February 18, 1999 and closed on or about June 1999. As a

result of this acquisition, Comcast obtained Greater Philadelphia Cablevision's cable systems

and approximately 79,000 cable subscribers in Philadelphia. *Id.* ¶ 52.b. Evidence relating to this

acquisition and held by the counterparty to the transaction is clearly relevant to Plaintiffs'

antitrust claims.

7

Each of the document requests contained in Schedule A of Plaintiffs' July 31, 2007 document Subpoena is directly relevant to this acquisition transaction. Greater Media, Inc.'s subsidiary, Greater Philadelphia Cablevision, was the other transactional counterparty to this acquisition. Request No. 1 requests that Greater Media provide documents relating to any study, analysis, evaluation or consideration of any advantages, disadvantages, reasons, or rationale for the acquisition, as well as any documents relating to the potential impact of the acquisition on subscribers or members of the Philadelphia class, on Greater Media's cable business or on Greater Media's competitors. Request No. 2, in turn, seeks documents identifying employees, officers, directors, consultants, experts or other persons who assisted Greater Media or took part in negotiations regarding the acquisition. Such persons obviously possess personal knowledge of the transaction and disclosure of their identities is clearly reasonably calculated to lead to the discovery of admissible evidence concerning the purpose and effects of the challenged acquisition.

Document Request Nos. 3-5 are also clearly relevant to Plaintiffs' claims. Request No. 3 requests documents relating to any study, evaluation or monitoring of the cable prices, practices or conduct of other cable providers operating in the Philadelphia area, including any documents relating to the possibility of entry by other cable providers. Similarly, Request No. 4 seeks documents relating to any application submitted by Greater Media for approval or transfer of any license to provide cable services in the Philadelphia area, as well as any documents relating to comments or opposition by Greater Media to any application by Comcast or another cable provider to provide cable services in the Philadelphia area market. Request No. 5 seeks documents relating to any analysis or evaluation of actual or potential competitors in the Philadelphia market. Each of these clear, focused requests bears directly on the issue of

8

60963

competition and anticompetitive effects of the challenged acquisition. Further, each request

seeks evidence directly relating to the established potential competition doctrine recognized by

the Supreme Court and by Judge Padova in the *Behrend* action. *See Behrend v. Comcast*

*Corporation*, 2007 WL 2221415, at 5 n.7 (E.D. Pa. 2007) ("[W]e find no cause to conclude that

the Supreme Court in deciding *Twombly* – a case addressing a Sherman Act Section 1 liability

theory – intended to alter its decisions in *United States v. Falstaff Brewing Corp.*, 410 U.S. 526

(1973) and *United States v. Marine Bancorporation*, 418 U.S. 602 (1974), recognizing potential

competition as a viable theory of liability under Section 2 of the Sherman Act."). Finally,

Request No. 5 is a routine request for documents relating to Greater Media's policies regarding

the retention or preservation of documents, including electronically stored information.

There simply can be no question under established law that Plaintiffs' limited document

requests are relevant.

## II.     PLAINTIFFS TOOK REASONABLE STEPS TO AVOID UNDUE BURDEN AND EXPENSE ON GREATER MEDIA.

Rule 45(c)(1) provides that "[a] party or an attorney responsible for the issuance and

service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on

a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1). Reasonable steps include the

requesting party's willingness to send personnel to review files, thus reducing any burden. *See*

*United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 413 (D.Mass. 1995) ("With regard to

MIFA's objections that the requests are burdensome, the United States indicated its willingness

to send personnel to MIFA to review its files, thus reducing any burden on MIFA.")

Plaintiffs provided Greater Media with a narrowly tailored Subpoena; offered to review

potentially responsive documents at Greater Media's place of business or the area where the

documents are stored, subject to all the protections contained in the existing Protective Order and

9

60963

an additional stipulation preserving Greater Media's privilege claims; and to pay reasonable copying costs. Nonetheless, Greater Media refuses to comply and Plaintiffs now reluctantly seek court intervention.

A.  Plaintiffs' Narrowly Tailored Subpoena is Not Unduly Broad or Overly Burdensome.

Whether a subpoena duces tecum results in an undue burden on a party depends on such factors as "the relevance of the documents sought, the necessity of the documents sought, the breadth of the request, the time period covered by the request, the particularity with which the documents are described, and the burden in fact imposed." *Demers v. LaMontagne*, 1999 WL 1627978, at *2 (D.Mass. 1999). Expense and inconvenience are also considered. *Id.* (declining to quash the non-party discovery subpoena). The determination of burden "is subject to the discretion of the court." *Id.*

As discussed above, Plaintiffs' July 31, 2007 Subpoena calls for production of documents that are clearly relevant. Plaintiffs' subpoena is not overbroad. Plaintiffs have twice narrowed their subpoena and reduced their requests from fifteen to six document requests, in response to Greater Media's burden concerns. The documents sought by Plaintiffs are clearly described in Requests Nos. 1-6, so that the subpoena is sufficiently particular in its requests. *Id.* ("The subpoena is sufficiently particular in that it clearly describes the types of documents sought.")

The burden itself is one of the many factors a court considers to determine whether a subpoena results in an undue burden. *Demers*, 1999 WL 1627978, at *2 (finding the burden imposed on the non-party minimal). Any burden or inconvenience imposed on Greater Media is minimal, particularly in light of Plaintiffs' repeated reasonable efforts to address Greater Media's concerns, including Plaintiffs' offer to (1) review potentially responsive documents at Greater Media's place of business or the area where the documents are stored, (2) designate selected

10

60963

documents for copying at Plaintiffs' reasonable expense, and (3) stipulate that such a procedure would not result in any waiver of any applicable privileges, which is already provided for by the Protective Order filed in this case. Woodward Decl., Exs. 3, 6, 9 and 11.

Plaintiffs have taken reasonable steps to avoid imposing undue burden and expense on Greater Media. *See* Fed. R. Civ. P. 45(c)(1). Plaintiffs' July 31, 2007 Subpoena is not unduly burdensome.

## B.    Greater Media's Request for Advance Payment of Unreasonable Costs is Unwarranted.

Greater Media asserts that it "would have to incur the significant expense of outsourcing the review to a law firm for the assistance of a paralegal and a mid-level associate, whose hourly rates would be in the range of $180 to $350" and that it "would have to obtain the input of the two people remaining in the company with any knowledge of the transaction, both of whom are highly compensated." Greater Media's June 7, 2007 letter, Woodward Decl., Ex. 5. Greater Media further asserts that "[o]ther costs associated with producing documents would include the cost of retrieving the documents, as swell [sic] as reproduction costs." *Id.* As previously noted, Plaintiffs have offered to pay the costs of copying responsive, identified documents.

Rule 45(c)(2)(B) provides that "an order to compel production shall protect any person who is not a party . . . from significant expense resulting from the inspection, copying, testing, or sampling commanded." The rule does not authorize or address payment by the requesting party of the costs of "outsourcing" preview of requested documents to outside counsel. Absent an order compelling document production, a non-party bears its own production costs. *See Boston Children's Heart Found., Inc. v. Nadal-Ginard*, 1995 WL 17015062 at *2 (D. Mass. 1995) (noting that third party "seeks to recover expenses for the expenses incurred in complying with the subpoena" but that it "has not cited any source or authority for such an award and noting the

11

absence of any evidence that the requesting party had failed to take reasonable steps to avoid imposing an undue burden on the third party"). Beyond the reasonable costs of copying, which Plaintiffs have offered to pay, Greater Media should bear its own expenses. "'[A] non-party can be required to bear some or all of its expenses where the equities of a particular case demand it.'" *In re Honeywell Intern., Inc. Sec. Litig.*, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003) (citations omitted); *McCloskey v. UPS Gen. Servs. Co.*, 1996 WL 684466, at *6 (D.Or. 1996) (finding that "[a]n attorney is ordinarily not necessary for tasks such as sorting through . . . reports and redacting identifying information. A legal assistant, or clerical workers supervised by a legal assistant, should be able to do this work.").

In determining costs, courts consider three factors: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance. *In re Exxon Valdez*, 142 F.R.D 380, 383 (D.D.C. 1992) (finding non-party was interested for the purposes of absorbing costs of compliance); *see also Honeywell Intern.*, 230 F.R.D. at 302-03 (finding non-party was "not a classic disinterested non-party" and had not offered any basis for determining the reasonable costs for compliance)*; In re First American Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (finding non-party auditor was "not the quintessential innocent disinterested bystander" in the litigation and that the public importance of the case "warrants a conclusion that [the non-party] bear a portion of the costs" the non-party was required to incur in petitioning foreign counts to lift restrictions to allow non-party to produce documents responsive to subpoena).

Greater Media undoubtedly has an interest in the outcome of this case. Indeed, its subsidiary, Greater Philadelphia Cablevision, was acquired by Comcast in a transaction Plaintiffs challenge as part and parcel of Defendants' anticompetitive course of conduct in violation of

12

Sections 1 and 2 of the Sherman Act. Greater Media's interests are directly aligned with those of

Comcast, the other party to the challenged acquisition transaction. *See Tutor-Saliba Corp. v.*

*United States,* 32 Fed. Cl. 609, 610 n. 5 (Ct. Fed. Cl. 1995) (denying non-party award of costs

allegedly incurred in responding to subpoena and noting that non-party "was substantially

involved in the underlying transaction and could have anticipated that the contract . . . might . . .

reasonably spawn some litigation, and discovery of [non-party]."); *In re First American Corp.*,

184 F.R.D. at 242 (noting that "[w]here a non-party was 'substantially involved in the underlying

transaction and could have anticipated that [the failed transaction would] reasonably spawn some

litigation,' expenses should not be awarded") (citing *Tutor-Saliba Corp.*, 32 Fed. Cl. at 610 n.5).

Greater Media can readily bear the costs of compliance, given the fact that those costs are

minimal under Plaintiffs' reasonable offer to review documents at Greater Media's place of

business or the location of the documents, while agreeing to preserve all privileges of Greater

Media and to pay the cost of copying designated documents responsive to the Subpoena. *See*

*McCloskey v. United Parcel Service General Servs. Co.*, 1996 WL 684466 at *3 (D. Or. 1996)

("UPS may do one of two things: (1) produce all of the redacted reports to the plaintiffs in order

to allow them to locate the ones for package car drivers with upper extremity injuries; or (2) do

the sorting itself."); *Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. at 610 n.5 (noting that

nothing in the record indicates that plaintiffs' counsel, in issuing subpoena, did not take

reasonable steps to avoid imposing undue burden on non-party and, to the contrary, plaintiff

agreed to assume "much of the usual burdens of discovery (*e.g.*, searching and copying

costs) . . . .").

Additionally, this litigation is a matter of clear public importance. Plaintiffs, as

consumers of cable services, challenge Defendants' conduct in restraining trade and

13

60963

monopolizing or attempting to monopolize regional cable markets in the Philadelphia and

Chicago areas (and, in the related *Rogers v. Comcast Corp.* and *Kristian v. Comcast Corp.* cases,

the Boston area cable market). This class action challenges illegal conduct by Defendants to

eliminate and prevent competition in the cable industry in violation of the Sherman Act. Compl.

¶ 6, Woodward Decl., Ex 12. As a result of Defendants' alleged antitrust violations, Plaintiffs

and members of the classes have been forced to pay higher prices for cable televisions than they

would have paid in the absence of such unlawful conduct. Private enforcement is an essential

component of ensuring compliance with the Sherman Act and promoting its purposes.[3] This

litigation clearly is infused with the public interest. *See United States v. International Business

Machines Corp.*, 71 F.R.D. 88, 92 (S.D.N.Y. 1976) (denying motion to quash a subpoena duces

tecum and ruling in antitrust action that the non-party had a duty to absorb the costs of

complying with the subpoena due to the significance of the antitrust litigation.)

Each of the factors courts consider support Plaintiffs' request that Greater Media absorb

its own costs of compliance with the Subpoena, with reasonable copying costs to be paid by

Plaintiffs.

## III.     GREATER MEDIA HAS FAILED TO ESTABLISH ITS PRIVILEGE CLAIMS AS REQUIRED BY FEDERAL RULE 45(d)(2).

Federal Rule 45(d)(2) provides:

> When information subject to a subpoena is withheld on a claim that
> it is privileged or subject to protection as trial preparation

---

[3] As the Supreme Court has observed:

Petitioner's claim need only be 'tested under the Sherman Act's general prohibition on unreasonable restraints of trade,'. . . .  Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions allowing private enforcement of the antitrust laws by an aggrieved party.  These laws protect the victims of the forbidden practices as well as the public. Furthermore, Congress itself has placed the private antitrust litigant in a most favorable position through the enactment of s 5 of the Clayton Act.

*Radovich v. National Football League*, 352 U.S. 445, 453-54 (1957) (internal citation omitted).

60963

> materials, the claim shall be made expressly and shall be supported
> by a description of the nature of the documents, communications,
> or things not produced that is sufficient to enable the demanding
> party to contest the claim.

Accordingly, the party claiming privilege bears the burden of properly asserting and establishing

the existence and applicability of the privilege. *Winchester Capital Mgmt. Comp. v. Mfrs.*

*Hanover Trust Co.*, 144 F.R.D. 170, 174 and 175 (D. Mass. 1992). Additionally, privileges such

as the attorney client privilege represent "exceptions to the demand for every man's evidence"

and "are not lightly created nor expansively construed, for they are in derogation of the search

for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Indeed, "[e]videntiary privileges in

litigation are not favored." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). Greater Media failed to

properly make and support its privilege claims as required by law.

A.     Greater Media's Attorney-Client and Work Product Claims Are Unsupported.

"Privilege claims may be raised as an objection to a specific documentary production

request. But the assertion of privilege must be timely and must also be accompanied by

sufficient information to allow the court to rule intelligently on the privilege claim." *Marx v.*

*Kelly, Hart & Hallman P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (finding party's assertion of attorney-

client privilege claim with respect to over 500 documents, without any elaboration or

explanation, to be "totally uninformative"); *Winchester Capitol*, 144 F.R.D. at 175 (subpoenaed

law firm did not comply with Rule 45(d)(2)'s requirement to support claim of privilege with a

description of the documents not produced sufficient to enable requesting party to contest the

claim). Greater Media failed to provide Plaintiffs with a description of the nature of the

documents withheld as privileged as requested by Plaintiffs and required by Rule 45(d)(2).

Despite the fact that Greater Media failed to meet its burden, Plaintiffs have repeatedly

offered Greater Media protection of privileged documents. The Protective Order itself

15

safeguards confidential documents produced by Greater Media, Inc. Specifically, the Protective Order expressly provides that any third party from whom discovery is sought may obtain the protection of the protective order (Protective Order ¶ 15); limits the use of produced documents exclusively for purposes of the above and identify related litigation (*id.* ¶ 3); prohibits use for any business purpose (*id.*); allows for the designation of confidential information (*id.* ¶ 2); provides that inadvertent disclosure itself does not waive any claim of confidentiality (*id.* ¶ 5); restricts access to documents produced in discovery (*id.* ¶¶ 8-10); requires filing under seal of documents containing confidential information (*id.* ¶ 11); provides a process governing inadvertent production of privilege materials (*id.* ¶ 14); and provides for the disposition of documents produced in discovery upon conclusion of the litigation (*id.* ¶ 17). *See* Protective Order, Woodward Decl., Ex. 6.a.) *See also Klay v. All Defendants*, 425 F.3d 977, 986 (11th Cir. 2005) (noting that "[t]he protective order ensured that the confidential nature of the data was not threatened.") Plaintiffs offered to stipulate, as the Protective Order already provides, that if any confidential or privileged information is inspected by Plaintiffs, all such information would be presumed to be designated confidential by Greater Media until such time that Greater Media provides copies of designated documents to Plaintiffs and that the initial production of such confidential or privileged information for inspection would not constitute a waiver of any privilege. *Id.* Woodward Decl., Exs. 3, 6, 8 and 11.

B.   Contrary to Greater Media's Assertion, Disclosures Made Pursuant to Court Order Are Not Voluntary and Do Not Waive Greater Media's Asserted Privileges.

Greater Media insists that disclosure of its documents to Plaintiffs would waive its attorney-client and work product privileges. However, this case does not arise in the usual context in which courts have addressed whether a party's voluntary disclosure of privileged material to a governmental agency results in waiver of privilege claims as to third parties. *See,*

16

60963

*e.g., Lupron Marketing and Sales Practices Litig.*, 313 F.Supp.2d 8 (D. Mass. 2004) (finding

waiver of attorney-client privilege and work product protection when pharmaceutical company

voluntarily produced privileged material to the government); *United States v. Massachusetts*

*Institute of Technology*, 129 F.3d 681 (1st Cir. 1997) (rejecting university's claim of selective

waiver of attorney-client privilege when university made disclosures to one governmental

agency and then objected to request for documents sought by another governmental entity, the

IRS). Rather, when documents must be produced pursuant to an order, disclosure of those

documents is not voluntary and the traditional waiver doctrine does not apply. *See In re Lupron*

*Marketing and Sales Practices Litig.*, 313 F. Supp.2d at 10 n.6 (stressing that the issue in that

case was whether voluntary disclosure of privileged material results in a waiver and noting that

"TAP does not argue that its disclosures were involuntary in any legal meaningful sense");

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427 n.14 (3d Cir.

1991) (finding that "[h]ad Westinghouse continued to object to the subpoena and produced the

documents only after being ordered to do so, we would not consider its disclosure of those

documents to be voluntary.").[4]

Thus, Greater Media's concern over whether a voluntary production of documents

pursuant to Plaintiffs' Subpoena would waive its possible privileges is misplaced. Greater Media

has made clear in its objections that it is not voluntarily producing any documents – and to date

has not done so – in compliance with the Subpoena. Rather, any such production will be

pursuant to the Subpoena and any order compelling production issued by this Court pursuant to

Plaintiffs' motion to compel.

---

[4] In addition, the traditional waiver rule applies only to documents known to be privileged. *Westinghouse*, 951 F.2d at 1424 (*citing United States v. AT & T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (finding that "voluntary disclosure to a third party of *purportedly privileged* communications has long been considered inconsistent with an assertion of the privilege." (emphasis supplied)). This is because the privilege obstructs the truth-finding process, and must be construed narrowly. *Westinghouse*, 951 F.2d at 1423.

17

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court issue an order

requiring Greater Media, Inc. to produce within ten (10) business days, or such other date as

respective counsel shall agree upon, documents for inspection and copying by Plaintiffs' counsel

responsive to Plaintiffs' July 31, 2007 Subpoena and further providing that Plaintiffs shall pay

the reasonable costs of copying any responsive documents designated by Plaintiffs' counsel for

copying.

Dated: September 13, 2007                    Respectfully submitted,

ADKINS KELSTON & ZAVEZ, P.C.

John Peter Zavez (#555721)
Noah Rosmarin (#630632)
90 Canal Street
Boston, MA 02114
Tel: (617) 367-1040
Fax: (617) 742-8280

Samuel D. Heins
Vincent J. Esades
David Woodward
Jessica N. Servais
Katherine T. Kelly
HEINS MILLS & OLSON, P.L.C.
3550 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 338-4605
Fax: (612) 338-4692

Barry Barnett
John Turner
Jason Fulton
Daniel Charest
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, TX 75202
Tel: (214) 754-1900
Fax: (214) 754-1933

18

60963

Anthony J. Bolognese (#36937)
Joshua H. Grabar (JHG 1707) (#82525)
BOLOGNESE & ASSOCIATES, LLC
Two Penn Center Plaza
1500 JFK Boulevard, Suite 320
Philadelphia, PA 19102
Tel: (215) 814-6750
Fax: (215) 814-6764

Marc H. Edelson (#51834)
HOFFMAN & EDELSON
45 West Court Street
Doylestown, PA 18901
Tel: (215) 230-8043
Fax: (215) 230-8735

Robert N. Kaplan
Gregory K. Arenson
Christine M. Fox
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
Tel: (847) 831-1585
Fax: (847) 831-1580

Lynn Lincoln Sarko
Mark A. Griffin
John H. Bright
Raymond J. Farrow
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

19

Michael Hausfeld
COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

Ann D. White
LAW OFFICES OF ANN D. WHITE, P.C.
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA  19046
Tel: (215) 481-0274
Fax: (215) 481-0271

Jayne Goldstein
MAGER & GOLDSTEIN, LLP
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Tel: (215) 640 -3280
Fax: (215) 640 -3281

Ted Donner
DONNER & COMPANY
LAW OFFICES LLC
203 North LaSalle Street, Suite 2100
Chicago, IL  60601
Tel:  (312) 805-2100
Fax:  (312) 556-1369

**COUNSEL FOR PLAINTIFFS**

20

60963