UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-mc-10224-PBS

CAROLINE BEHREND, ET AL.,

Plaintiffs

v.

COMCAST CORPORATION, ET AL.,

Defendants

**ORDER ON**

**PLAINTIFFS' MOTION TO COMPEL**
(Docket # 2 )

ALEXANDER, M.J.

On December 8, 2003, Plaintiffs, (collectively, "Behrend"), cable subscribers of the Defendants, (collectively, "Comcast"), filed an antitrust class action in the United States District Court for the Eastern District of Pennsylvania alleging violations of Sections 1 (restraint of trade) and 2 (unlawful monopolization and attempted monopolization) of the Sherman Act.  This Motion to Compel arises from non-party Greater Media, Inc.'s ("Greater Media") efforts to withhold requested documents from production under claims of relevance, undue burden and expense, and attorney-client and work product privileges.

1

On September 13, 2007, Behrend filed its Motion to Compel Greater Media to produce subpoenaed documents. On October 5, 2007, the District Judge entered an Order granting the Motion to Compel. However, on October 10, 2007, Greater Media filed a Motion for Reconsideration of the ruling on the Motion to Compel. Subsequently, on October 20, 2007, the District Judge entered an order granting the Motion for Reconsideration and vacating the October 5, 2007 Order. On October 24, 2007, the District Judge referred the Motion to Compel third party Greater Media, Inc., to produce subpoenaed documents to this Court.

Behrend seeks to compel non-party Greater Media, to produce all documents responsive to a subpoena duces tecum. Behrend believes that Greater Media possesses relevant information pertaining to defendant Comcast's alleged unlawful behavior that is the subject of the underlying litigation. Comcast stands accused of unlawfully monopolizing and attempting to monopolize, and unreasonably restraining trade in the Philadelphia and Chicago area cable markets through a series of acquisitions of, and market allocating swap agreements with, competitor cable companies. One example of Comcast's alleged illegal activity is the 1999 acquisition of Greater Philadelphia Cablevision, Inc., at the time a subsidiary of Greater Media, resulting in additional cable subscribers to Comcast's Philadephia cluster. Incident to the underlying litigation, Behrend seeks to review documents relating to this acquisition.

On May 8, 2007, Behrend served Greater Media, a company that conducts

business in the District of Massachusetts, with a subpoena duces tecum dated May 4, 2007. Soon after, on May 15, 2007, Greater Media objected to the subpoena by letter. Since that time the parties have exchanged numerous written communications. Greater Media has refused to produce any documents responsive to the six document requests contained in the current version of the subpoena.[1] Greater Media contends that its company is not equipped financially to undertake the task requested by Behrend.[2] However, the moving party, Behrend, has offered to mitigate some of the costs by reviewing potentially responsive documents at Greater Media's place of business or wherever the documents are stored. Further, Behrend proposes to undertake this review before Greater Media incurs the expense of a privilege review. As such, Behrend stipulates that the review will be subject to all of the protections contained in the existing Protective Order in the underlying litigation and will enter into an additional stipulation specifically preserving Greater Media's privilege claims, if any. Greater Media could then conduct a much smaller review of only culled documents, saving substantial resources. Despite this proposal, the parties cannot reach an agreement. Behrend, therefore, seeks to compel Greater Media, to produce the

---

[1] The original subpoena included fifteen separate requests for documents relating to the 1999 sale of Greater Media's Philadelphia cable television business to Comcast. After some negotiation, the subpoena now consists of six requests.

[2] Greater Media estimates that the cost of hiring personnel to undertake a review of the documents would be in the range of $180 to $350 per hour for a legal assistant or junior level lawyer. Behrend believes such a demand is inappropriate and unwarranted.

subpoenaed documents for inspection and copying.  For the foregoing reasons, Behrend's Motion to Compel is hereby GRANTED.

The First Circuit has recognized that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." Cusmano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). Rule 45(c)(1) of the Federal Rules of Civil Procedure provides that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).  In addition, Rule 45(c)(2)(B) provides that "an order to compel production shall protect any person who is not a party...from significant expense resulting from the inspection, copying, testing, or sampling commanded." Fed. R. Civ. P. 45(c)(1).  When determining whether a subpoena duces tecum results in an undue burden on a party such factors as "the relevance of the documents sought, the necessity of the documents sought, the breadth of the request...expense and inconvenience" can be considered. Demers v. LaMontagne, No. Civ.A. 98-10762-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999).   The main issue for this Court is whether Greater Media is required to pay for its own costs incurred responding to the subpoena duces tecum.[3]  Usually, absent an order

---

[3]While the issue of privilege is duly noted, this Court believes the Protective Order issued by Judge John R. Padova and the represented agreement by Behrend that no waiver of privilege will occur, seems to cover the issue as to this Court's involvement.  If they arise, any future privilege issues are more properly brought

compelling document production, a non-party bears its own production cost. See Boston Children's Heart Found., Inc. v. Nadal-Ginard, No. Civ.A. 93-12539-REK, 1995 WL 17015062, at *2 (D. Mass. Aug. 23, 1995). "A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." In re Honeywell Intern., Inc. Sec. Litig., 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003). Furthermore, in determining the cost allocation, courts consider three factors: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance. In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992).

In this matter, Behrend, as the moving party, contends that it has taken reasonable steps to avoid imposing undue burden or expense on Greater Media. See Fed. R. Civ. P. 45(c)(1). For example, Behrend narrowed the scope of the subpoena and agreed to additional protections to prevent waiver of privilege; offered to send staff members to review documents; and offered to pay reasonable copying cost. Behrend's position is that Greater Media must absorb any other costs of compliance with the subpoena. Behrend maintains that such an arrangement is fair given: (1) Greater Media has an interest in the case because its interests are directly aligned with those of Comcast; (2) the cost of compliance to Greater Media under Behrend's plan will be

---

before Judge Padova.

minimal; and (3) this litigation is a matter of public importance because it is a class action challenging the alleged illegal conduct of Comcast to eliminate and prevent competition in the cable industry in violation of the Sherman Act.

In contrast, Greater Media maintains that Behrend's plan is not ideal because the requested documents may contain privileged information.  As such, Greater Media would endure severe financial hardship if it were forced to hire legal counsel to review the 400-500 unorganized boxes of documents for privilege, let alone prepare them for production.  Greater Media maintains that it should not be required to bear the cost of compliance because: (1) Greater Media has no interest in the outcome of the case as it went out of the cable business by the end of 1999, soon after selling the Philadelphia cable business to Comcast[4]; (2) Behrend is in a better financial position to absorb the cost of production as Greater Media's legal staff consists of its general counsel and one part-time paralegal, neither of whom have the time to commit to the tasks involved in complying with the subpoena; and (3) This is not a case of public importance simply because it is a class action alleging violations of antitrust law.  A blanket characterization of such cases as matters of public importance justifying imposition of discovery costs on non-parties like Greater Media is improper.

Despite the fact that Greater Media is no longer directly affiliated with the cable

---

[4]Additionally, Greater Media's sale of its cable television business was conducted pursuant to a competitive bid process, under the scrutiny of the Department of Justice, which, at the time, deemed the transaction as not in violation of any antitrust laws.

6

industry, it is clear that Greater Media has an interest in the outcome of this litigation. Greater Media was involved in a transaction with Comcast and could have anticipated such a transaction could potentially spawn litigation or discovery.  See Tutor-Saliba Corp. v. United States, 32 Fed. Cl. 609, 610 n.5 (Ct. Fed. Cl. 1995) (noting that non-party "was substantially involved in the underlying transaction and could have anticipated that the contract...might...reasonably spawn some litigation, and discovery of [non-party]"); In re First Am. Corp., 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (noting that "where a non-party was 'substantially involved in the underlying transaction and could have anticipated that [the failed transaction would] reasonably spawn some litigation,' expenses should not be awarded") (citing Tutor-Saliba Corp., 32 Fed. Cl. at 610 n. 5).  While Greater Media claims it would create a financial burden to absorb significant costs of compliance with the subpoena because it does not have the staff to devote to the task of sifting through hundreds of boxes of unindexed documents and must hire outside counsel, this claim was called into doubt at oral argument.  The parties briefly discussed the size of Greater Media's operations, which clearly appears to be much greater than a small, local media outlet.[5]  Additionally, if Behrend's proposed plan is followed, the cost of compliance to Greater Media may be greatly mitigated as the number of documents to review for privilege should be greatly

---

[5]During the hearing, Behrend's counsel pointed to the Declaration of Ellen Rubin, Greater Media's General Counsel and Vice President, which confirms Greater Media's ownership of 20 radio stations, 13 newspapers, and broadcast towers located in 6 states.

reduced, correspondingly reducing time spent on review by counsel.  Lastly, the underlying litigation is a matter of real concern to the cable industry.  If Comcast is found in violation of the Sherman Act, then customers of Comcast have been forced to pay higher prices for cable television due to Comcast's unlawful behavior.

Accordingly, Behrend's Motion to Compel third party Greater Media to produced subpoena documents is hereby GRANTED.  Additionally, while this Court is not ordering compliance with Behrend's plan, said plan seems perfectly acceptable and an easy way for Greater Media to save on costs of compliance.  That being said, Greater Media may still decide the better option is for its counsel to conduct a privilege review before production, despite greater expense.  This is purely Greater Media's decision to make.

SO ORDERED.

*January 16, 2008*                                                                  */s/ Joyce London Alexander*
Date                                                                                          United States Magistrate Judge